# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Case No. 2:17-cv-04594 (VEB)

JAMES VINCENT DELONG,

            Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

            Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In November of 2010, Plaintiff James Vincent Delong applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by Irene Ruzin, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10, 12). On April 6, 2018, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 20).

## II. BACKGROUND

Plaintiff applied for benefits on November 3, 2010, alleging disability beginning December 1, 2007. (T at 161-63).[1]  Plaintiff thereafter amended the alleged onset date to April 1, 2010. (T at 75-76).  The application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On December 11, 2012, a hearing was held before ALJ Mary L. Everstine. (T at 46).  Plaintiff appeared with his attorney and testified. (T at 49-62).  The ALJ also received testimony from Sharon Spaventa, a vocational expert (T at 62-75).

On January 7, 2013, ALJ Everstine issued a written decision denying the application for benefits.  (T at 8-23).  The Appeals Council denied Plaintiff's request for review on April 8, 2014. (T at 1-6).

On May 8, 2014, Plaintiff, acting by and through his counsel, filed an action seeking judicial review of the Commissioner's decision. (T at 684-91).    On

---

[1] Citations to ("T") refer to the transcript of the administrative record at Docket No. 15.

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

February 2, 2015, the Honorable Paul L. Abrams, United States Magistrate Judge, issued a Decision and Order reversing the Commissioner's decision and remanding the case for further proceedings. (T at 692-715). The Appeals Council issued a remand Order on March 18, 2015. (T at 716-20).

A second administrative hearing was held on October 5, 2015, before ALJ Sally C. Reason. Plaintiff appeared with counsel and testified. (T at 646-653, 654-56). The ALJ also received testimony from Dr. Anthony Francis, a medical expert (T at 625-646), and Ronald Hatakeyama, a vocational expert. (T at 653, 656-61).

On October 27, 2015, ALJ Reason issued a written decision denying the application for benefits. (T at 600-19). ALJ Reason's decision became the Commissioner's final decision on May 20, 2017, when the Appeals Council denied Plaintiff's request for review. (T at 594-99).

On June 22, 2017, Plaintiff, acting by and through his counsel, filed this action seeking judicial review of the Commissioner's decision. (Docket No. 1). The Commissioner interposed an Answer on November 8, 2017. (Docket No. 14). The parties filed a Joint Stipulation on March 28, 2018. (Docket No. 18).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for calculation of benefits.

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d

599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

## C.    Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2010 (the amended alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2010 (the date last insured). (T at 605).  The ALJ found that Plaintiff's degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, and hepatitis C were "severe" impairments under the Act. (Tr. 605).

However, the ALJ concluded that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 606).

The ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b), as follows: he can frequently climb stairs and ramps, but never ladders, ropes, or scaffolds; he can perform other postural components for 1/3 of the day; no overhead work bilaterally; frequent reaching and handling within 18 inches of his body; frequent gripping, grasping, fingering and feeling; no work at unprotected heights or extreme cold; and avoid all pulmonary irritants, as well as dangerous and moving machinery. (T at 607).

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

The ALJ found, as of the date last insured, that Plaintiff could not perform his past relevant work as a stonecutter. (T at 611).  However, considering Plaintiff's age (52 on the date last insured), education (at least high school), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 611-12).

As such, the ALJ found that Plaintiff was not entitled to benefits under the Social Security Act because he was not disabled between April 1, 2010 (the alleged onset date) and December 31, 2010 (the date last insured). (T at 613).  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 594-99).

**D.    Disputed Issues**

As set forth in the parties' Joint Stipulation (Docket No. 18), Plaintiff offers five (5) arguments in support of his claim that the Commissioner's decision should be reversed.  First, Plaintiff challenges the ALJ's credibility determination.  Second, he argues that the ALJ did not properly assess the medical opinion evidence.  Third, Plaintiff contends that the ALJ erred in rejecting lay witness evidence.  Fourth, he challenges the ALJ's residual functional capacity determination.  Fifth, Plaintiff

argues that the ALJ's step five findings were flawed. This Court will address each argument in turn.

## IV. ANALYSIS

### A.     Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows: He was assaulted in April of 2010, resulting in a neck injury. (T at 649). Between the date of the assault and December 31, 2010 (the date last insured), he suffered from extreme pain in his neck and back, numbness on the left side of his body, and radiating pain. (T at 650-51). He experienced weakness and had difficulty sitting, standing, and walking. (T at 651-52). During this period, Plaintiff could only lift about 10 pounds. (T at 651).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not fully credible. (T at 609).

Fundamentally, the ALJ's credibility determination was based on her assessment of the medical evidence, which the ALJ found inconsistent with Plaintiff's complaints. For the following reasons, this Court finds the ALJ's assessment flawed and not supported by substantial evidence.

The ALJ concluded that the "objective findings" with respect to Plaintiff's cervical spine impairment did not provide "strong support" for his claims of disabling pain and limitation. (T at 608). No reasonably apparent view of the record evidence supports this conclusion.

Plaintiff presented to the emergency room in April of 2010 with complaints of neck pain lasting 1-2 months and worsening. (T at 448). He was described as being in moderate distress, with severe neck pain. (T at 449). A CT of the spine noted disc space narrowing at C6/C7, C5/C6, and C4/C5. (T at 449). Plaintiff was treated with intravenous morphine and valium. (T at 449). He was described as feeling "much better" after medication, but was referred for an MRI and follow-up with a spine specialist. (T at 450).

In May of 2010, Plaintiff returned to the emergency room with complaints of severe neck pain. (T at 461). Although swelling was minimal, Plaintiff was noted to have left arm weakness and left posterior arm paresthesias (abnormal sensation). (T at 462). He was prescribed Perococet and Valium. He was referred to a neurosurgeon and an MRI was ordered. (T at 461). The MRI revealed several significant findings, including spinal stenosis at C4/C5 and neural foraminal narrowing severe bilaterally at C6/C7 and on the right side at C5/C6. (T at 467-68).

Plaintiff was seen by Thomas Jones, PA-C, his primary treating provider, in October of 2010. Plaintiff was described as "wheelchair bound." (T at 487). Mr. Jones noted that Plaintiff's orthopedic doctor and neurosurgeon had recommended surgery. (T at 487). Plaintiff had decreased motor strength, especially on the left side, and needed assistance to stand. (T at 488). Mr. Jones opined that Plaintiff was

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

"definitely … not able to work" and "will likely not be able to work in the future …." (T at 488).

Plaintiff initiated treatment with a new provider (Sierra Vista Family Care) in November of 2010 and was immediately referred for follow-up with a neurosurgeon. (T at 490). A December 2010 MRI revealed degenerative disc disease with posterior spondylosis impressing the adjacent thecal sac, as well as central spinal canal stenosis ranging from mild to moderate at C4/C5, C5/C6, and C6/7. (T at 495).

The ALJ summarized much of this evidence, which pre-dates the date last insured, and found it inconsistent with Plaintiff's complaints of disabling pain. (T at 608-609). However, the ALJ never explained why she believed the evidence contradicted Plaintiff's subjective complaints. This Court recognizes that under the deferential standard of review applicable here it would be bound to accept such an explanation, provided it was supported by substantial evidence. However, no such explanation exists, with the ALJ apparently believing the contradiction was self-evident.

However, the imaging studies, treating provider assessments, and course of treatment all appear to support claims of significant neck pain and limitation.

The ALJ offers the conclusory characterization of Plaintiff's course of treatment as "conservative," but this cannot be reconciled with a record that includes

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

two hospitalizations, intravenous pain medication, and referrals to a neurosurgeon. *See Harvey v. Colvin*, 2014 U.S. Dist. LEXIS 107607, at *28 (C.D. Cal. Aug. 5, 2014)(finding that ALJ erred in discounting credibility based on "conservative" treatment where treatment included injections). Indeed, it is not clear from the decision what additional treatment the ALJ believed Plaintiff would have been expected to receive during this period other than surgery, which was recommended and eventually performed in any event.

The ALJ's review of the evidence from after the date last insured is likewise flawed. The ALJ summarized the medical evidence following the date last insured, characterized the course of treatment as "conservative," and found it inconsistent with Plaintiff's subjective claims. (T at 609).

Again, however, the evidence is strongly supportive of Plaintiff's claims. The ALJ did not explain why she reached a different result.

Plaintiff was seen by Dr. Abirami Muthukumaran, a treating neurologist, in February of 2011. Dr. Muthukumaran referenced MRI findings of "severe neural foraminal stenosis," recommended physical therapy and epidural injections, and increased the dosage of Plaintiff's pain medication. (T at 513). On examination, Dr. Muthukumaran reported limited range of motion of the cervical spine, dermatomal

sensory loss in the upper extremities bilaterally, diminished sensation in the right lower leg, and antalgic gait. (T at 512-13).

Dr. Muthukumaran described the results of a nerve conduction study as "abnormal" and showing "electrophysiological evidence of a chronic bilateral multi-level C5-C8 radiculopathies, subacute to chronic of moderate severity affecting bilateral upper extremities." (T at 521). Dr. Muthukumaran opined that, based on the MRI results (which he also described as "abnormal") and nerve conduction study, Plaintiff needed to be evaluated by a neurosurgeon. (T at 521).

In June of 2011, Dr. Muthukumaran explained that Plaintiff had "cervical spinal stenosis with severe radiculoptahy affecting bilateral upper extremities and neck." Dr. Muthukumaran referenced the imaging studies and clinical exam, as well as noting that Plaintiff was awaiting surgery. He described Plaintiff as "100 % disabled." (T at 577).

Plaintiff was examined by Dr. Kofi Kessey, a neurosurgeon, in July of 2011. Dr. Kessey confirmed the diagnosis of cervical stenosis and stated that some of Plaintiff's symptoms were attributable to this condition. He described surgery as an option, but explained that the procedure would be intended to prevent or slow down symptom progression, with the possibility it might not alleviate or improve Plaintiff's pain. (T at 579). Plaintiff was noted to have full strength and was able to

ambulate independently. (T at 579).  Dr. Kessey performed cervical spine surgery

(bilateral laminectomy and vertebral fusion) in September of 2011. (T at 586-88).

As with the evidence from prior to the date last insured, the ALJ summarized

most of the above evidence and stated that it contradicted Plaintiff's complaints. (T

at 609).  Apparently, the ALJ believed the contradiction was self-evident.  This

Court finds this conclusion far from apparent.

Moreover, the ALJ's continued characterization of Plaintiff's course of

treatment as "conservative" is belied by the record, which included an increasing

regimen of pain medication and cervical spine surgery.  Moreover, Dr. Kessey's

assessment that even surgery might not alleviate Plaintiff's pain is strong evidence

that there was, in fact, not any more aggressive treatment option(s) under the

circumstances.  *See Perez v. Colvin*, No EDCV 14-2626, 2016 U.S. Dist. LEXIS

44230, at *17 (C.D. Cal. Mar. 31, 2016)("The ALJ cannot fault Plaintiff for failing

to pursue nonconservative treatment options if none existed.")(citing *Lapeirre-Gutt*

*v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

The ALJ noted that Plaintiff "acknowledged improvement in his condition and

surgery," citing this as a basis for discounting his testimony. (T at 610).  However,

Plaintiff continued to report neck pain following surgery (T at 51-52, 652) and Dr.

Sheila Flom, a treating physician, opined in November of 2012 (over a year after the

surgery) that Plaintiff was not capable of prolonged sitting, standing, or walking, and would likely miss work more than three times per month due to impairments or treatment. (T at 589-93).

The ALJ also found it significant that Plaintiff "entered[ ] and left the hearing room, walking easily without the use of an assistive device." (T at 610). While the ALJ may consider observations of the claimant during the administrative hearing when assessing credibility, *See* SSR 96-7p, reliance on such observations has rightly been disfavored as "'sit and squirm' jurisprudence." *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985); *see also Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984)("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.").

For the reasons stated above, this Court finds that the ALJ's credibility assessment cannot be sustained. None of the reasons cited by the ALJ for discounting Plaintiff's subjective complaints are supported by substantial evidence. A remand is required, with the nature of the remand to be discussed below.

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

## B.     Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

"The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Id*.

In this case, the ALJ afforded "great weight" to the opinions of Dr. Anthony Francis, a non-examining medical expert who testified at the administrative hearing and Dr. S. Garcia, a non-examining State Agency review consultant. (T at 610). The ALJ gave "little weight" to the opinions of two (2) treating physicians, Dr. Flom and Dr. Muthukumaran. The ALJ's assessment of the medical opinion evidence is not supported by substantial evidence.

### 1. Dr. Flom

In November of 2012, Dr. Sheila Flom reported that she was Plaintiff's primary care physician and had been seeing him monthly for 2-3 years. (T at 590). Dr. Flom concluded that Plaintiff could occasionally lift less than 10 pounds, stand/walk for less than 2 hours in an 8-hour workday, and sit for less than 6 hours in an 8-hour workday. (T at 591). She explained that Plaintiff would need to take unscheduled breaks every 30-60 minutes and would be absent from work due to impairments or treatment more than 3 times per month. (T at 591).

The ALJ offered three reasons for giving little weight to Dr. Flom's opinion. First, the ALJ stated that Dr. Flom's assessment was "inconsistent with the medical evidence of record that indicated [Plaintiff] was able to ambulate without the use of

an assistive device." (T at 610). It is not clear why the ALJ believed this justified

discounting Dr. Flom's assessment, as she also found that Plaintiff could ambulate

without an assistive device. (T at 591).

Second, the ALJ found Dr. Flom's opinion contradicted by evidence that

Plaintiff's "condition largely improved after surgery in 2011 …." (T at 610). The

ALJ does not explain what evidence she is referring to in reaching this conclusion.

Moreover, the most persuasive evidence relative to Plaintiff's level of improvement

following surgery would be the assessment of a physician who regularly treated

Plaintiff before and after surgery – *i.e.*, Dr. Flom.

Third, the ALJ characterized Dr. Flom's opinion as "remote in time." (T at

610). The ALJ does not say whether "remoteness" is measured from the date of her

decision (October 27, 2015) or from the date last insured (December 31, 2010). If

the former, this is a strange conclusion, since the ALJ simultaneously gave "great

weight" to the assessment of Dr. Garcia, a non-examining physician, which was

offered in February of 2011, more than a year and a half before Dr. Flom's opinion.

On the other hand, if the ALJ meant that Dr. Flom's opinion was "remote in time"

from the date last insured, this finding is likewise flawed.

Medical reports "containing observations made after the period for disability

are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225

(9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007) (noting that "reports containing observations made after the period for disability are relevant to assess the claimant's disability").

Further, Dr. Flom stated that she had been treating Plaintiff monthly for at least two years (T at 590), which would mean she began treating him no later than November of 2010, which is prior to the date last insured. Thus, she was perfectly capable of opining as to his limitations during the relevant time period.

### 2. Dr. Muthukumaran

In June of 2011, Dr. Muthukumaran, Plaintiff's treating neurologist, explained that Plaintiff had "cervical spinal stenosis with severe radiculopathy affecting bilateral upper extremities and neck." He described Plaintiff's neurological exam, spine MRI, and electromagnetic testing as abnormal and opined that Plaintiff was "100 % disabled." (T at 577).

The ALJ correctly noted that the ultimate disability determination is reserved to the Commissioner (T at 610), and then offered three reasons for giving "little weight" to Dr. Muthukumaran's opinion.

First, the ALJ described Dr. Muthukumaran's opinion as "remote in time." (T at 610). The ALJ again does not make clear what time period "remoteness" is

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

measured from.   Presumably in this instance, the ALJ did not mean "remote" from the date last insured, as Dr. Muthukumaran's opinion was rendered in June of 2011, less than 6 months after that date (December 31, 2010).   If the ALJ means "remote" from the date of her decision in October of 2015, she offers no reason why the opinion of Dr. Garcia, who never examined Plaintiff, should not likewise be dismissed as "remote," given that it was rendered 4 months *before* Dr. Muthukumaran's assessment.   Instead, the ALJ gave Dr. Garcia's more "remote" opinion "great weight." (T at 610-11).

Second, the ALJ discounted Dr. Muthukumaran's assessment because it was rendered "prior to Plaintiff's successful surgery." (T at 610).   The ALJ provides no basis for the characterization of Plaintiff's surgery as "successful" and no explanation as to what metric she used to assess in what respect or on what dimension the surgery was a "success."   Indeed, the most persuasive evidence, from a physician who treated Plaintiff regularly before and after the surgery (Dr. Flom), is that the surgery was not successful at least insofar as it might have been intended to restore Plaintiff's ability to perform even sedentary work.   This is not surprising given the neurosurgeon's pre-surgery explanation that the procedure was primarily intended to prevent or slow down symptom progression, with the possibility it might not alleviate or improve Plaintiff's pain. (T at 579).

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

Third, the ALJ noted that during the time period at issue Plaintiff "maintained the ability to ambulate and care for himself." (T at 610). The ALJ does not explain how Plaintiff's ability to ambulate and attend to self-care somehow *ipso facto* contradicts Dr. Muthukumaran's assessments of significant limitation with regard to the ability to perform work. The receipt of disability insurance benefits is not conditioned upon an inability to ambulate and/or attend to self-care.

Dr. Muthukumaran is a treating physician. He is a neurologist and thus has specialized knowledge in the area of most concern. His opinion was based on imaging studies and his clinical exam. The ALJ's reasons for giving "little weight" to this assessment were insufficient for the reasons outlined above.

### 3.      Non-Treating Physicians

In February of 2011, Dr. S. Garcia, a non-examining State Agency review consultant, opined that Plaintiff could perform a full range of light work, while being limited to occasional balancing, stooping, kneeling, crouching, and crawling and only performing occasional overhead reaching with the left upper extremity. (T at 555-60). The ALJ gave this opinion "great weight." (T at 610).

However, as noted by Judge Abrams in his decision remanding this case from District Court the first time, Dr. Garcia did not even mention the December 2010 MRI and did not have the benefit of reviewing any treatment notes after January 3,

2011, which would have included the highly significant assessments of Dr. Muthukumaran (treating neurologist) and Dr. Kessey (treating neurosurgeon). (T at 704-705). The ALJ did not recognize, let alone address, the concerns identified by Judge Abrams.

Moreover, the opinion of a non-examining State Agency review physician cannot, without more, constitute substantial evidence sufficient to sustain a denial of benefits. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

Dr. Anthony Francis, a non-examining orthopedic surgeon, testified at the second administrative hearing. The ALJ described Dr. Francis's assessment as follows: "Dr. Francis opined that [Plaintiff] would be capable of performing a full range of light work except only occasionally perform[ing] postural [activities], no overhead lifting and [he] should not be exposed to unprotected heights, excessive temperatures, vibrations, dust, odors, pulmonary irritants or dangerous moving machinery." (T at 610). The ALJ gave Dr. Francis's opinion, thus described, "great weight." (T at 610).

Dr. Francis's actual testimony was much less clear and far more equivocal that the ALJ recognizes. Before offering his assessment of Plaintiff's residual functional capacity ("RFC"), Dr. Francis explained that: "I'm going to go with the

light RFC restriction and, you know, if that doesn't satisfy, we can do something else." (T at 630). He also testified that the medical evidence, including the imaging studies, "possibly" and "potentially" suggested a Listing level impairment. (T at 628-29). Dr. Francis opined that Plaintiff was limited to sedentary work as of the date of the administrative hearing (October 2, 2015), but was hesitant to express an opinion about Plaintiff's limitation as of the date last insured. (T at 637-38). Plaintiff's counsel attempted to elicit more information on these subjects during cross-examination, but was rebuffed by the ALJ, who frequently interrupted counsel's examination and prevented her from pursing further clarifications. (T at 638-40, 642-46).

The ALJ's reliance on the opinions of these two non-examining physicians to discount the well-founded assessments of two treating physicians was misplaced. This was error requiring remand. *See Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. Cal. 1994)("[W]e also hold that the ALJ committed a *legal* error when he failed to grant deference to the conclusions [of claimant's treating physician]…[The courts have] 'accorded deference to treating physicians precisely because they are the doctors with 'greater opportunity to observe and know the patient.'")(emphasis in original)(quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1993)).

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

## C.    Lay Witness Evidence

"Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

Janiece Lackey, Plaintiff's sister, submitted a statement supporting and corroborating limitations attested to by her brother with regard to lifting, standing, walking, sitting, kneeling, and climbing. (T at 212-19).   The ALJ assigned "little weight" to Ms. Lackey's opinion. (T at 608).  The ALJ characterized the "accuracy" of Ms. Lackey's information as "questionable" because Ms. Lackey was "not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms." (T at 608).   The ALJ likewise referenced the fact that Ms. Lackey might be expected to be "colored by affection" for Plaintiff and would have a "natural tendency" to accept his complaints as credible. (T at 608).

These reasons are not sufficient.  A family lay witness has valuable insights to offer precisely because of their frequency of contact with the claimant. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

It is thus improper to discount such evidence purely because the witness is (a) lay person and (b) a family member. In other words, the ALJ's decision to reject Ms. Lackey's statement because she is related to Plaintiff and not a medical professional begs the question. Lay evidence is, by very its nature, evidence from a non-medical professional with some sort of personal relationship with the claimant. To describe as such is not a reason to reject it. If it was, all evidence of this type would be rejected *ipso facto*, which is clearly contrary to the Regulations. *See* 20 CFR § 404.1513 (e)(2); SSR 88-13; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.").

The ALJ also found that Ms. Lackey's statement, like Plaintiff's testimony, was contradicted by the "preponderance of the opinions and observations by the medical doctors in this case." (T at 608). This is an odd finding for the ALJ to make in this particular case, given that she rejected the opinions of two treating physicians who actually observed Plaintiff, while accepting the views of two physicians who never treated or examined him. In other words, the ALJ found it significant that Ms. Lackey was not "medically trained to make exacting observations," but then rejected the exacting observations of two physicians who had such medical training.

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

1    The ALJ's consideration of the lay evidence was flawed and cannot be

2    sustained.

3    **D.    RFC Determination**

4         An ALJ's assessment of the claimant's residual functional capacity ("RFC")

5    must be upheld if the ALJ has applied the proper legal standard and substantial

6    evidence in the record supports the decision. *Bayliss v. Barnhart*, 427 F.3d 1211,

7    1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record

8    and "explain in [her] decision the weight given to . . . [the] opinions from treating

9    sources, nontreating sources, and other nonexamining sources." 20 C.F.R. §

10   404.1527(e)(2)(ii); see also § 404.1545(a)(1).

11        The ALJ determined that, as of the date last insured, Plaintiff retained the

12   RFC to perform light work as defined in 20 CFR § 416.967 (b), as follows: he can

13   frequently climb stairs and ramps, but never ladders, ropes, or scaffolds; he can

14   perform other postural components for 1/3 of the day; no overhead work bilaterally;

15   frequent reaching and handling within 18 inches of his body; frequent gripping,

16   grasping, fingering and feeling; no work at unprotected heights or extreme cold; and

17   avoid all pulmonary irritants, as well as dangerous and moving machinery. (T at

18   607).

19

20

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

As discussed in detail above, the ALJ's RFC determination is inconsistent with Plaintiff's testimony, which was not properly weighed, and with the treating provider opinions, which were not properly assessed. As such, this Court finds the ALJ's RFC determination not supported by substantial evidence.

**E.     Step Five Analysis**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987).

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

"If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ relied on vocational expert testimony to conclude at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 611). The hypothetical presented to the vocational expert was based on the ALJ's RFC determination. (T at 657-59). As discussed above, the ALJ's RFC determination was not supported by the record. As such the vocational expert's opinion has no evidentiary value and the step five analysis cannot be sustained.

**F.     Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and the opinions of two treating physicians. There are no outstanding issues that must be resolved before a disability determination can be made. It is clear from the record that a finding of disability would be required if the evidence was credited. As such, a remand for calculation of benefits is the appropriate remedy.

The Commissioner argues in conclusory fashion that a remand for further proceedings would be the appropriate remedy if this Court were to find the ALJ's decision not supported by substantial evidence. However, it is not clear what purpose such a remand would serve in this case. The Ninth Circuit has held that it is not appropriate to "remand for the purpose of allowing the ALJ to have a mulligan."

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB

*Garrison v. Colvin*, 759 F.3d 995, 1012, 1021 (9th Cir. 2014). Indeed, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Plaintiff applied for benefits in November of 2010, nearly eight (8) years ago. This matter was already remanded once due to the Commissioner's failure to properly assess the evidence. Further proceedings are neither necessary nor justified.

## V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this case for calculation of benefits; and

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case without prejudice to a timely application for attorneys' fees and costs.

DATED this 27[h] day of September 2018,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – DELONG v BERRYHILL 2:17-CV-04594-VEB